IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00545-WYD-KLM

TONY E. POWELL,

      Plaintiff,

v.

J. WILNER (S.I.A.),
MR. RIOS (Warden),
MR. KRIST (Lieutenant),
MR. ROMERO (Property Officer), and
MR. DUNLAP (DHO Hearing Officer),

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX

This matter is before the Court on **Defendant's Motion to Dismiss** [Docket No.

127; Filed July 24, 2008] ("Motion to Dismiss").  With leave of Court, Plaintiff filed two

Responses to the Motion to Dismiss [Docket Nos. 141, 148; Filed Sept. 26, 2008 and Oct.

6, 2008].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1.C. the matter

has been referred to this Court for recommendation.  The Court has reviewed the Motion

to Dismiss, Plaintiff's Responses, the entire case file, and the applicable law and is

sufficiently advised on the issues.  For the reasons set forth below, the Court respectfully

**RECOMMENDS** that Defendant's Motion to Dismiss [Docket No. 127] be **GRANTED in

part and DENIED in part**.

## I. Factual and Procedural Background

On May 22, 2008, Plaintiff, who is proceeding *pro se*, filed a lawsuit against Defendants in their individual capacities alleging violations of various constitutional rights pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971). The following facts are alleged in Plaintiff's complaint [Docket No. 103]. At the time of filing, Plaintiff was incarcerated at the United States Penitentiary in Florence, Colorado ("USP-Florence"). *Complaint* [#103] at 3. Because of the procedural posture of the case, the Court accepts all well-pled factual allegations as true.

On December 30, 2005, Plaintiff claims that Defendant Rios ordered an institutional lock down because of a number of inmate assaults not involving Plaintiff. *Id.* at 6. During the lock down, Plaintiff alleges that he did not have access to hygiene materials, clean bed linen, change of clothing or exercise. *Id.* Plaintiff does not specify the duration of the lock down period in his operative complaint, but Defendants indicate that the lock down lasted five days and Plaintiff does not dispute this in his Responses. *See Motion to Dismiss* [#127] at 10.

In January 2006, Defendant Dunlap held a disciplinary hearing regarding Plaintiff's alleged assault of another inmate. *Complaint* [#103] at 4. Plaintiff contends that Defendant Dunlap did not interview the alleged victim, consult any witnesses, including Plaintiff or staff, or perform any other investigation. *Id.* After the hearing, Defendant Dunlap sanctioned Plaintiff and put him in segregation. *See Id.* Although not entirely clear from the facts alleged in Plaintiff's complaint, it appears that Plaintiff was segregated from

approximately January 2006 to February 2006, the exact dates being unknown. See *Id.* at 4. As pled in the complaint, Plaintiff was ultimately cleared of any wrongdoing and his record expunged. *Id.*

During his segregation, Plaintiff alleges that he made written and oral requests for legal materials to Defendants Krist, Romero and Wilner on several occasions. *Id.* Specifically, Plaintiff contends that he informed Defendants that he had a court deadline to file a petition for writ of certiorari with the United States Supreme Court no later than February 9, 2006. *Id.* According to Plaintiff, Defendants ignored Plaintiff's requests and denied him access to the law library and to documents that he needed in order to file his petition. *Id.*

In February 2006, while Plaintiff was still in segregation, Plaintiff claims that Defendant Wilner, acting as Special Investigative Administrator, confronted Plaintiff about the alleged assault. *Id.* at 3. Plaintiff claims that when he refused to confess to the assault, Defendant Wilner pushed him in the middle of his chest and on the right shoulder in order to threaten and coerce him into a confession. *Id.* After the alleged confrontation, Defendant Wilner sent Plaintiff an incident report falsely indicating that Plaintiff had admitted to the assault. *Id.* Later, the alleged victim signed an affidavit stating that Plaintiff had not assaulted him. *Id.* at 4. Plaintiff alleges that on the basis of the false report, he was kept in segregation for a longer period of time. *Id.* at 5.

Plaintiff's operative complaint is not a model of clarity. The complaint contains twelve separately numbered paragraphs, with two sets of claims numbered one through six. For instance, there are two factually dissimilar claims each labeled as Claim One. *Compare id.* at 2, *with id.* at 5. Further there appears to be no numerical correlation

between the first set of six claims and the second set of six claims, although many of the allegations raised in the first set of claims are also raised in the second set of claims. In addition, the complaint contains a type-written narrative which purports to summarize Plaintiff's claims apart from the numbered claims themselves. After a careful review of the allegations contained in Plaintiff's complaint, the Court interprets Plaintiff's complaint as containing a total of five separate claims for relief. In Claim One, Plaintiff alleges that Defendant Wilner violated his Eighth Amendment rights by using excessive force to coerce Plaintiff into confessing to an assault. In Claim Two, Plaintiff alleges that Defendant Wilner violated his First and Fifth Amendment rights by creating a false incident report about the alleged assault in retaliation for Plaintiff refusing to admit to the assault. In Claim Three, Plaintiff alleges that Defendants Krist, Romero and Rios violated his First Amendment rights by denying him access to the law library and court documents that he needed in order to file an appeal. In Claim Four, Plaintiff alleges that Defendant Dunlap violated his Fifth Amendment rights by sanctioning him for an alleged assault without conducting an investigation or a proper hearing. In Claim Five, Plaintiff alleges that Defendant Rios violated his Eighth Amendment rights when he ordered a lock down and deprived him of "hygienes." Plaintiff seeks compensatory and punitive damages. *Id.* at 8.

In their Motion to Dismiss, Defendants assert various defenses to Plaintiff's allegations. Defendants first argue that sovereign immunity shields them from liability for actions taken in their official capacities. *Motion to Dismiss* [#127] at 4. Defendants further assert that Plaintiff failed to properly exhaust his *Bivens* claims pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). *Id.* at 5-7. In addition, Defendants attack the sufficiency of all of Plaintiff's factual allegations. Often, Defendants' and

Plaintiff's arguments fail to squarely meet; however, the Court has reviewed the complaint and the parties' pleadings, and addresses each claim pursuant to the constitutional provisions and arguments that best apply to Plaintiff's allegations.

## II. Legal Standards

### A. Standard of Review for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1).

Because federal courts are courts of limited jurisdiction, the Court must have a statutory basis for exercising jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Fed. R. Civ. P. 12(b)(1) permits a Court to test whether it has subject-matter jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. Here, Defendants assert a facial attack on the basis of sovereign immunity. *Motion* [#127] at 4-5. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

### B. Standard of Review for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

#### A. Sovereign Immunity

Defendants assert that the Court lacks subject matter jurisdiction over any official capacity *Bivens* claim because of sovereign immunity. *Motion* [#127] at 4. While sovereign immunity does bar claims for damages against government officials in their official

capacities, it does not preclude claims for damages against federal officials in their individual capacities. *Kyler v. Everson*, 442 F.3d 1251, 1252-53 (10th Cir. 2006); *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005). A review of the complaint reveals that Plaintiff brings claims against each Defendant in his individual capacity only. *Complaint* [#103] at 2, 4. In addition, Plaintiff reiterates in one of his Responses that he intended all claims to be asserted against Defendants in their individual capacities. *See Response* [#148] at 2. Since Plaintiff has not alleged any claims against Defendants in their official capacities, Defendants' argument regarding sovereign immunity is moot. Therefore, I respectfully **RECOMMEND** that the Motion to Dismiss be **DENIED** to the extent that it seeks dismissal of all claims for damages due to sovereign immunity.

### B. Failure to Exhaust Administrative Remedies

As a preliminary matter, Defendants argue that Plaintiff has failed to exhaust his administrative remedies by fully utilizing the internal multi-level grievance process in place at USP-Florence. *Motion* [#127] at 5. Although failure to exhaust administrative remedies is an affirmative defense pursuant to the PLRA, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216-17 (2007). In application of *Jones*, the Tenth Circuit has noted that it must be clear from the face of the complaint that an inmate failed to exhaust available administrative remedies before the district court may dismiss the claim for failure to exhaust. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Because it is not clear from the face of the operative complaint that Plaintiff has failed to exhaust his administrative remedies, the

Court may not dismiss his complaint on these grounds.[1]  Accordingly, I respectfully

---

[1] The Court remains extremely troubled by the artificial constraints placed on the appropriate application of Fed. R. Civ. P. 12 in cases involving the exhaustion requirement of the PLRA, as mandated by applicable case precedent.  Longstanding case authority has established that the "purpose of Rule 12[] is to expedite and simplify proceedings . . . . [I]t is not the purpose of Rule 12[], nor should it be construed to permit either party to put the other to such expense and delay as to make the seeking of justice a profitless thing, all the more so when such expense and delay is the sole benefit accomplished." *E.I. Du Pont de Nemours & Co. v. Dupont Textile Mills, Inc.,* 26 F. Supp. 236, 236-37 (D. Pa. 1939).  The proper application of Rule 12 should therefore permit dismissal (without prejudice) of cases where the prisoner's failure to exhaust is obvious from the face of the pleadings in the record when the decision regarding dismissal is made.   In a perfect world, this result should be achievable relatively early in the proceedings, so as to avoid precisely the expense and delay which Rule 12 is designed to eliminate.

This is a case where the prisoner's failure to exhaust is relatively obvious from the face of the pleadings filed by him prior to the filing of the operative complaint.  However, because case law allows me to consider *only* matters of public record or documents which are attached to or referenced in the *operative* complaint on a motion to dismiss, see *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008), but not previously-filed complaints, see *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1204-05 (7th Cir. 1998), the obvious and appropriate result of such a motion is necessarily subverted.  Instead, the case will linger until the inevitable motion for summary judgment is filed, when the parties will conclusively address the issue of whether the prisoner has exhausted his administrative remedies.  The amount of time, energy and money that would ordinarily be spent on this litigation in the meantime is nothing short of a shameful waste.

Here, in the operative complaint, Plaintiff fails to indicate whether he exhausted his administrative remedies.  However, in previously-filed complaints, Plaintiff made statements which can only be construed to admit that he has not exhausted his administrative remedies.  [Docket Nos. 42 and 47].  There, in response to the question "Have you exhausted the available administrative remedies?", Plaintiff checked both the "yes" and "no" boxes.  *See, e.g.,* Complaint [#42] at 9.  As for his reason for checking "no," Plaintiff indicates that he is "still waiting on response [sic] of administrative proceedings."  *Id.*  Manifestly, Plaintiff's statement that he is "still waiting" on an administrative response is an unqualified admission that the administrative process is incomplete.  Accordingly, Plaintiff has admitted that he has failed to exhaust his administrative remedies.  As for his reason for checking "yes," Plaintiff indicates that his "tort responses" are attached.  *Id.*  Indeed, attached to his prior complaint are documents which suggest that Plaintiff complied with the procedures required to litigate a tort claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675.  *Id.* at 11-14.  However, a liberal reading of Plaintiff's operative complaint does not reveal the existence of any claim brought pursuant to the FTCA.  On the contrary, Plaintiff indicates that his claims are brought against Defendants in their individual capacities only pursuant to *Bivens* and further describes the alleged conduct associated with each named Defendant pursuant to its alleged constitutional implications.  *See Complaint* [#103] at 2-3, 5; *see also Response* [#148] at 2.  Manifestly, Plaintiff's compliance with jurisdictional requirements associated with litigating an FTCA claim does not operate as exhaustion pursuant to the PLRA.  *See, e.g.*, *Steele v. Fed'l BOP,* 100 Fed.

**RECOMMEND** that the Motion to Dismiss be **DENIED** to the extent that it seeks dismissal

of all claims due to failure to exhaust administrative remedies.

### C. Claim One—Excessive Force—Eighth Amendment Claim

Plaintiff's first claim for relief alleges that Defendant Wilner assaulted Plaintiff by

pushing him in (1) the middle of the chest and then (2) the right shoulder. *Complaint* [#103]

at 3. Specifically, Plaintiff contends that in February 2006, he was escorted to a secluded

room to meet with Defendant Wilner. *Id.* While in the room, Defendant Wilner asked him

for information regarding his involvement in an alleged assault of another inmate. Plaintiff

Appx. 773, 776 (10th Cir. June 7, 2004) (unpublished decision) (holding that "filing an FTCA claim would not exempt [inmate] from the PLRA exhaustion requirement"); *Holmes v. United States,* No. Civ-06-796-R, 2006 WL 2850490, at *1 (10th Cir. Oct. 3, 2006) (unpublished decision) ("Plaintiff is . . . wrong in asserting that a prisoner asserting a *Bivens* claim for monetary relief against federal officials is not required to exhaust his administrative remedies" even where it can be shown that he exhausted his remedies pursuant to the FTCA).

Moreover, Plaintiff was afforded two opportunities to address the arguments raised by Defendants in the Motion to Dismiss regarding his failure to exhaust. In his first Response, Plaintiff does not dispute the clear language in his previously-filed complaints that he did not exhaust his administrative remedies. *Response* [#141] at 3-4. Instead, Plaintiff directs the Court to consider the documents attached to those complaints, both of which purport to show that Plaintiff exhausted his remedies pursuant to the FTCA. *Id.* at 3 (citing *Complaint* [#42] & [#49]). Similarly, in his second Response to the Motion to Dismiss, Plaintiff does not dispute the clear language in his previously-filed complaints that he did not exhaust his administrative remedies. *Response* [#148] at 2-3. Rather, he erroneously contends that exhaustion of a tort claim pursuant to the FTCA obviates the need to pursue further exhaustion. *Id.* at 2 ("[Defense counsel] admits that the tort claim responses were timely, making all else irrelevant . . . .").

In sum, this is a case where review of Plaintiff's previously-filed complaints calls out for a finding that Plaintiff has failed to exhaust his administrative remedies. Nevertheless, because the law requires that it must be clear *from the face of the operative complaint* that an inmate failed to exhaust administrative remedies before the district court may dismiss the claim for failure to exhaust, I decline to do so here. *Aquilar-Avellaveda*, 478 F.3d at 1225. While I might exercise my authority to convert the Motion to Dismiss to a motion for summary judgment for purposes of resolving the exhaustion issue, I decline to do so here due to the length of time the Motion to Dismiss has been pending and the case's recent transfer to this Court. Further delay (to allow notice and additional briefing on the exhaustion issue) would also be an inefficient use of the Court's and parties' resources at this stage of the litigation. Nevertheless, I feel compelled to express my view that I am constrained to reach a result that is antithetical to the important purposes of Rule 12, as expressed in decades of American jurisprudence.

contends that Defendant Wilner then pushed him in the middle of his chest and again on the shoulder in an attempt to threaten and coerce Plaintiff into confessing to the alleged assault. *Id.*

While the Tenth Circuit generally employs a "hands off" policy with regard to matters of prison administration, courts should not ignore constitutional violations. *Bethea v. Crouse*, 417 F.2d 504, 505-06 (10th Cir. 1969). Prison officials violate the Eighth Amendment when they use force "maliciously and sadistically" in order to cause harm regardless of whether the plaintiff suffered any injury. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* To be sure, not every "push or shove" by a prison guard amounts to a constitutional violation. *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled on other grounds by Graham v. Connor*, 490 U.S. 386 (1989). A minor use of force may be *de minimis* if it "is not of the sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991). First, the Court considers whether the alleged force "was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2002) (citation omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," only those physical punishments rising above *de minimis* uses of force "are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9-10 (citations omitted). While the presence of an injury is not required, presence or absence of an injury is a factor in the determination

of whether Defendant Wilner's conduct constituted an objectively serious use of force. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992) (holding that "significant physical injury" is not required because constitutional injury focuses on whether infliction of pain was unnecessary and wanton.)

Second, as to the subjective component, the Court considers whether Defendant Wilner intended harm, i.e. whether he acted "maliciously and sadistically." *See Hudson*, 503 U.S. at 9. Indeed, the touchstone inquiry in an excessive force claim is whether the force was applied in a "good-faith effort to maintain and restore discipline or maliciously and sadistically" to cause harm. *See DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (quoting *Whitley*, 475 U.S. at 320-21). The subjective element can only be proved by showing that Defendant Wilner acted with a sufficiently culpable state of mind. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hudson*, 503 U.S. at 8.

Here, with regard to the objective component, I note that Plaintiff has not alleged that he suffered any injury or pain as a result of Defendant Wilner's alleged conduct. While not necessarily dispositive, the lack of injury or pain tends to show that Defendant Wilner's use of force was *de minimis*. *See Sampley v. Ruettgers*, 704 F.2d 491, 495 (10th Cir. 1983) (holding that lasting injury or severe pain that is more than momentary is necessary for an Eighth Amendment claim). In addition, this Court finds that two pushes are not sufficiently grave to implicate a constitutional injury. While Defendant Wilner's conduct may rise to the level of a tort, it is not repugnant to the conscience of mankind so as to rise to the level of a constitutional violation. *See Hudson*, 503 U.S. at 9-10; *see also Sampley*, 704 F.2d at 496 (holding that an intentional tort may not rise to the level of a constitutional violation).

With regard to the subjective component, I note that while Plaintiff contends that

Defendant Wilner intended to shove him in order to coerce him to confess, Plaintiff has not alleged that Defendant Wilner maliciously or sadistically intended to cause harm. *See, e.g., Sheffey v. Greer*, 391 F. Supp. 1044, 1046 (E.D. Ill. 1975 ) (holding that a punch in the face does not violate the Eighth Amendment because "although a spontaneous attack by a guard is 'cruel' and it is hoped 'unusual,'" it does not rise to the level of shocking or brutal conduct) (citations omitted). Furthermore, Plaintiff's lack of injury or pain also tends to show that Defendant Wilner's conduct was not unnecessarily wanton and that he did not have a culpable state of mind. *See Hudson*, 503 U.S. at 9; *see also Northington*, 973 F.2d at 1523-24. Finally, giving deference to prison officers' motives for using force against prisoners, I conclude that allegations regarding two pushes, even if true, do not rise to the level of a constitutional violation. *See Sampley*, 704 F.2d at 496 (holding that spitting on hair clippers and pushing Plaintiff does not rise to the level of cruel and unusual punishment). Accordingly, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** with regard to Claim One.

### D. Claim Two—False Incident Report—First & Fifth Amendment Claim

Plaintiff contends that Defendant Wilson used a false incident report in order to extend Plaintiff's time in segregation after Plaintiff asserted his Fifth Amendment right against self-incrimination and his First Amendment right not to speak. *Complaint* [#103] at 5. Plaintiff alleges that Defendant Wilson attempted to force Plaintiff to confess to the alleged assault of another inmate. *Id.* at 3. After Plaintiff refused to confess to the assault, he was returned to his segregation cell. *Id.* According to Plaintiff, the next day Defendant Wilson prepared an incident report in which he indicated that the Plaintiff had confessed to the assault. *Id.* Plaintiff contends that the incident report was patently false and issued

only in retaliation for Plaintiff's exercise of his constitutional rights. *Id.*

The Tenth Circuit has held that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted). To establish a "retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, No. 01-cv-01315, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004). While generally addressed in conjunction with the exercise of conduct protected by the First Amendment, retaliation claims may also be brought by individuals who have exercised other constitutional rights such as the right against self-incrimination pursuant to the Fifth Amendment. *Wilkie v. Robbins*, ___ U.S. ___, 127 S. Ct. 2588, 2601 (2007) (citing *Lefkowitz v. Turly*, 414 U.S. 70 (1973)). Occasionally actions taken in retaliation may amount to constitutional violations even though such actions would otherwise be permissible. *Peterson*, 149 F.3d at 1144. However, "an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Id.*

The first element of Plaintiff's claim requires an allegation that he was engaged in protected conduct. Here, when Defendant Wilner confronted Plaintiff about the assault, Plaintiff refused to confess, exercising both his Fifth Amendment right against self-incrimination and his First Amendment right not to speak. *See generally Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-98 (1988). As such, Plaintiff plausibly alleges

that he was exercising protected conduct.

The second element of Plaintiff's claim requires an allegation that he was subject to an adverse action. *Baldauf*, 2008 WL 280839, at *7. Here, Plaintiff alleges that Defendant Wilner issued a false incident report that prolonged Plaintiff's time in segregation. *Complaint* [#103] at 3. Accordingly, Plaintiff plausibly alleges adverse conduct to satisfy the second element of his retaliation claim. *See Montoya v. Bd. of County Comm'rs*, 506 F. Supp. 2d 434, 448 (D. Colo. 2007) (finding that placement in segregation for several months was an adverse action).

The third element of Plaintiff's claim requires an allegation that "a causal connection" exists between his conduct and the adverse action. *Baldauf*, 2008 WL 280839, at *7. To prevail on the causation element of a claim for retaliation, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (quoting *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). When alleging causation, a plaintiff must provide specific facts that "the defendant's alleged retaliatory motives were the 'but for' causation of the defendants' actions." *Id.* Here, Plaintiff contends that Defendant Wilner authored a false incident report the morning after the alleged confrontation. *Complaint* [#103] at 3. In the incident report, Defendant Wilner indicated that Plaintiff confessed to the alleged assault. *Id.* Plaintiff further alleges that because the incident report implicated him, he had to remain in segregation longer. *Id.* at 5. Furthermore, Plaintiff alleges that Defendant Wilner wrote the false incident report in direct response to Plaintiff's refusal to confess to the alleged assault. *Id.* at 3. Therefore, in this Court's estimation, Plaintiff has alleged sufficient facts to plausibly show that Plaintiff's exercise of his Fifth and First Amendment rights may have

14

caused Defendant Wilner to retaliate against him by writing a false incident report.

Regardless of whether Plaintiff has plausibly shown the violation of a constitutional right, Defendant Wilner argues that he is entitled to qualified immunity. Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1982). "[G]overnment officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. When the defense of qualified immunity is raised, the Court must consider whether Plaintiff's factual allegations demonstrate that Defendant Wilner violated a constitutional right and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

Because Plaintiff has plausibly alleged a deprivation of his constitutional rights, the next consideration is whether the right was "clearly established when the alleged violation occurred." *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 841 (10th Cir. 2005) (citation omitted). First, the Supreme Court recognized that the First Amendment embraces the right not to speak. *Riley*, 487 U.S. at 798. Second, the right against self-incrimination is well established within the Fifth Amendment of the Constitution. Furthermore, the Tenth Circuit recognized in 1990 that prison officials may not retaliate against a prisoner who exercises his constitutional rights. *Smith*, 899 F.2d at 947; *see also Lefkowitz*, 414 U.S.

at 81 (holding that government cannot compel self-incriminating testimony without immunization by threatening adverse action against those who assert their Fifth Amendment rights). Because the law is clearly established that a prison official may not retaliate against an inmate for exercising his constitutional rights, I find that at this stage, Defendant Wilner is not entitled to qualified immunity. *See generally Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Accordingly, I **RECOMMEND** that the Motion to Dismiss be **DENIED** with regard to Claim Two.[2]

### E. Claim Three—Access to the Courts—First Amendment Claim

Plaintiff asserts that Defendants Krist, Romero, and Rios denied him documents and access to the law library in violation of his First Amendment rights. Specifically, Plaintiff contends that while he was in segregation, Defendants did not provide him with the necessary legal tools to meet an upcoming case filing deadline. *Complaint* [#103] at 7. As a direct result, Plaintiff alleges that he lost his right to appeal his case to the Supreme Court because he missed the deadline to file a petition for writ of certiorari. *Id.*

To set forth a claim of denial of access to the courts, a plaintiff must plead and prove that he actually was impeded in his ability to pursue a nonfrivolous claim. *See Lewis v. Casey*, 518 U.S. 343 (1996). Generally, the right of access to the courts has been found to extend only as far as protecting an inmate's ability to prepare initial pleadings in a civil

---

[2] I note that Defendants analyzed Claim Two as a substantive due process claim. *Motion to Dismiss* [#127] at 14. My role in interpreting Plaintiff's complaint on a Motion to Dismiss is to ignore unnecessary legal labels and attempt "to create a better correspondence between the substance of [the party's claims] and the underlying legal basis." *See Castro v. United States*, 540 U.S. 375, 381 (2003). Substantive due process claims are disfavored if the claim can be analyzed under "an explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). As such, I find that this claim is more appropriately analyzed, and should go forward, as a retaliation claim.

rights action regarding his current confinement or in an application for a writ of habeas corpus. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995). Furthermore, an inmate must satisfy the standing requirement of pleading an "actual injury" by showing that the denial of legal resources plausibly hindered his efforts to pursue a nonfrivolous claim. *Lewis*, 518 U.S. at 349-357; *Peterson*, 149 F.3d at 1145; *see also Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (holding that to state a claim for denial of access to the courts, a plaintiff "must show that any denial or delay of access to the court prejudiced him in pursuing litigation" (citation omitted)).

Here, Plaintiff has failed to allege that his law suit was nonfrivolous. *Trujillo*, 465 F.3d at 1227 (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)). In fact, the Court takes judicial notice of the order from the Fifth Circuit Court of Appeals dismissing Plaintiff's 28 U.S.C. § 2255 claim which Plaintiff referenced in his operative complaint. *United States v. Powell*, No. 04-50931 (5th Cir. Aug. 1, 2005) [Docket No. 138 at 16-17].[3] The Fifth Circuit decision, from which Plaintiff indicated that he was seeking a writ, explicitly stated that Plaintiff's claims were frivolous. *Complaint* [#103] at 4, 7; *Powell*, No. 04-50931, at 2. The alleged inability to pursue an appeal of a claim found to be frivolous does not constitute an actual injury for purposes of implicating a constitutional injury. *Lewis*, 518 U.S. at 353 n.2, n.3 (holding that "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Moreover, I note that Plaintiff indicated in his complaint that at the time he

---

[3] I may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand." *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

was attempting to file an appeal, he was represented by counsel. *Complaint* [#103] at 7. Therefore, even if he could show that his claim was nonfrivolous, it is unclear how his own personal inability to file the pleadings caused him an actual injury. Accordingly, I **RECOMMEND** that the Motion to Dismiss be **GRANTED** with regard to Claim Three.

### F. Claim Four—Sanctioned Without Investigation—Fifth Amendment Claim

Plaintiff contends that he was sanctioned and put in segregation without a fair hearing. *Complaint* [#103] at 4. Specifically, Plaintiff alleges that Defendant Dunlap ordered Plaintiff to appear before him in a disciplinary hearing concerning an alleged assault. *Id.* Plaintiff also contends that Defendant Dunlap failed to investigate the assault, interview the alleged victim, or present any witnesses to testify about the assault. *Id.* Finally, Plaintiff contends that even after the Regional Office sent the matter back for rehearing, Defendant Dunlap imposed further sanctions before finally expunging Plaintiff's records. *Id.*

Procedural due process protects the individual against "arbitrary action of government." *Wolff*, 418 U.S. at 557. While it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001), "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff*, 418 U.S. at 555-56. In general, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest. *Id.* Second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.* at 1149.

18

The Constitution does not in itself create any liberty or property interest and therefore "[t]he Due Process clause standing alone confers no liberty interest in freedom from state action 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (citation omitted). Rather, liberty interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). For prisoners, a liberty interest is only found in a "restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In considering whether Plaintiff's allegations are sufficient to trigger a liberty interest, I must examine the conditions of confinement before I determine whether such conditions impose an atypical and significant hardship on the inmate. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (citing *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002)). Here, the mere placement in administrative segregation does not, on its own, implicate a liberty interest. *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templemen v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). Indeed, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). A determination of what constitutes an atypical and significant hardship necessarily includes a consideration of whether the condition in question is a dramatic departure from what

would be expected of a person serving a similar sentence. This consideration includes whether the segregation complained of (1) differs significantly from other types of segregation, (2) differs significantly from what it would have been had the prisoner remained in the general prison population, (3) increases the duration of a prisoner's sentence, (4) is for an indefinite term, and (5) furthers a legitimate interest. *Sandin*, 515 U.S. at 484-87; *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Plaintiff's complaint fails to address with specificity many of the factors relevant to my determination. Although not clear, Plaintiff's complaint appears to allege that he was in segregation for a maximum of sixty days. *Complaint* [#103] at 4. However, the mere allegation that Plaintiff was placed in segregation for a two-month period does not, on its own, articulate a liberty interest. *See, e.g.*, *Sandin*, 515 U.S. 484-86 (holding that thirty-day detention did not implicate a liberty interest after consideration of prisoner's conditions of confinement). For example, the Tenth Circuit has held that sixty-five days in segregation is not sufficient by itself to show an atypical hardship. *Scott v. Crowley County Corr. Facility*, 76 Fed. Appx. 878, 880-81 (10th Cir. 2003) (unpublished decision) (dismissing as frivolous prisoner's due process claim regarding his sixty-five day segregation). Furthermore, Plaintiff has not indicated that the segregation was for an indeterminate term or that he had to go without privileges held by other inmates.

To the extent that Plaintiff indicates that he was put in segregation for his participation in an alleged assault, *Complaint* [#103] at 7, such a contention suggests that the segregation was not arbitrary, but rather a response to a legitimate interest in maintaining order and sequestering suspected assailants. *See Turner v. Safley*, 482 U.S.

78, 89-91 (1987). Morever, while Plaintiff also alleges that he was terminated from his factory job as a result of his segregation, *Complaint* [#103] at 7, loss of a factory job, on its own, is not sufficient to constitute an atypical hardship. *See Templemen*, 16 F.3d at 370 (noting that "prisoners do not have a constitutional right to employment").[4]

Finally, I note that after his case was reviewed by the Regional Office and sent back for rehearing, Defendant Dunlap expunged Plaintiff's record. *Complaint* [#103] at 4. Thus, the segregation did not appear to "inevitably affect the duration of [Plaintiff's] sentence, " nor does Plaintiff allege that it did. *See Sandin*, 515 U.S. at 487. On balance, I find that a consideration of the relevant factors in conjunction with the conditions alleged by Plaintiff, does not support a finding that Defendant Dunlap's conduct, if true, violated a liberty interest. Because Plaintiff has failed to adequately allege the deprivation of "any liberty interest to which he was entitled, no particular process was constitutionally due or required." *Templemen*, 16 F.3d at 371. Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** as to Claim Four.

### G. Claim Five—Lock Down Deprivations—Eighth Amendment Claim

Plaintiff alleges that Defendant Rios denied him hygiene materials, including clean bed linen, change of clothing, and exercise during a lock down. *Complaint* [#103] at 2, 5. To address an unrelated inmate assault, Defendant Rios ordered a lock down that lasted for approximately five days beginning on December 30, 2005. *Motion to Dismiss* [#127]

---

[4] To the extent that Plaintiff also contends that during his placement in segregation he was denied access to the prison law library and his legal documents, I analyze this portion of Plaintiff's claim pursuant to the First Amendment in my analysis of Claim Three. *See supra* Part III.E. *See generally Taylor v. Stewart*, 49 Fed. Appx. 262 (10th Cir. Oct. 22, 2002) (unpublished decision) (analyzing prisoner's seventy-five day segregation pursuant to the Fifth Amendment for temporal element and pursuant to the First Amendment for denial of access to the courts).

at 6; *Response* [#148] at 9.[5]

The Eighth Amendment merely requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (citation omitted). The Court's analysis of Plaintiff's Eighth amendment claim involves both an objective and a subjective component. *Wilson*, 501 U.S. at 298. As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation. "Because discomfort is 'part of the penalty that criminal offenders pay for their offenses against society, . . . only those deprivations denying 'the minimal civilized measures of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Hudson*, 503 U.S. at 9 (citations omitted).

As to the subjective component, the Court considers whether Defendant Rios intended the deprivation, i.e. acted with deliberate indifference to the harm that could result. Deliberate indifference can only be proved by showing that Defendant Rios "kn[ew] of or disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837.

This standard recognizes a balance between "the exigencies of running a prison"

---

[5] The operative complaint does not indicate the length of the lock down, however, Defendants note in their Motion to Dismiss that the lock down lasted five days. The time period for the lock down was also set forth in a complaint filed by Plaintiff in another case. *See* Case No. 06-cv-01061-ZLW [Docket No. 2]. As the Tenth Circuit Court of Appeals noted in a earlier appeal of the present case, I may take judicial notice of the pleadings filed in 06-cv-01061 because they are a matter of public record. *Powell v. Rios*, 241 Fed. Appx. 500, 501 n.1 (10th Cir. July 19, 2007) (unpublished decision). In addition, despite filing two Responses to Defendant's Motion to Dismiss, Plaintiff does not dispute Defendant's contention that the lock down lasted five days. *See Gulf Coast W. Oil Co. v. Trapp*, 165 F.2d 343, 349 (10th Cir. 1947) (permitting Court on a motion to dismiss to use uncontroverted facts ascertainable in another matter which are relevant to an issue in the pending case to "reach a just result and bring an end to litigation").

and the "'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *DeSpain*, 264 F.3d at 973 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Moreover, "[t]he Eighth Amendment 'does not mandate comfortable prisons,' and conditions imposed may be 'restrictive and even harsh.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1311 (10th Cir. 1998) (citation omitted). Thus, while prison officials must take reasonable measures in securing a safe and humane environment for prisoners, the Court should take into account the circumstances of the challenged conditions, specifically the duration of the alleged deprivations. *Id.* at 974; *see also Hudson*, 503 U.S. at 5-6 (holding that a court should give wide-ranging deference to prison staff in their attempts to quell prison disturbances).

Here, I find that Plaintiff's allegations, *i.e.* lack of clean linens, clothing, and exercise over a short period of time, do not rise to the level of a constitutional violation. In fact, courts have rejected constitutional challenges involving arguably more extreme circumstances. *See, e.g.*, *William v. Delo*, 49 F.3d 442, 444-46 (8th Cir. 1995) (finding no Eighth Amendment violation when a prison refused to give a prisoner running water, "tooth brush, tooth paste, deodorant, soap, sheets, blankets, pillow cases, pillows, mattresses, his legal mailing, and clothing" for four consecutive days); *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (holding that five-day confinement in roach-infested cell did not implicate a constitutional injury); *Ladd v. Stotts,* No. 92-3205-DES, 1995 WL 584700, at *3 (D. Kan. Sept. 28, 1995) (unpublished decision) (finding no Eighth Amendment violation when prison denied prisoner clean water for thirty hours). Given the level of deprivations alleged and considering that the province of the Court is to inquire into constitutional requirements, but not dictate how best to run a prison facility, I find that the Plaintiff's claim

23

fails to allege objectively and sufficiently serious deprivations.  *See* generally Rhodes *v.*

*Chapman*, 452 U.S. 337, 347-52 (1981); *see also Bethea*, 417 F.2d at 506 (noting that "the

hands-off doctrine operates reasonably to the extent that it prevents judicial review of

deprivations which are necessary or reasonable concomitants of imprisonment" (citation

omitted)).  As Plaintiff has failed to articulate an objectively serious injury, it is unnecessary

to consider whether Plaintiff has alleged a sufficient subjective intent except to note that

Plaintiff fails to attribute any deliberate or specific intent to Defendant Rios.  Accordingly,

I **RECOMMEND** that the Motion to Dismiss be **GRANTED** with regard to Claim Five.

## IV.  Conclusion

For the aforementioned reasons, I respectfully **RECOMMEND** that Defendant's

Motion to Dismiss be **GRANTED in part and DENIED in part**.  I summarize my

Recommendation as follows:  (1) Plaintiff has failed to state a claim for relief as to Claims

One, Three, Four, and Five; (2) Plaintiff has minimally pled facts, which, if true, may state

a claim for relief as to Claim Two.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall

have ten (10) days after service of this Recommendation to serve and file any written

objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  A party's failure to serve and file specific, written objections waives *de novo*

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v.*

*Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this

Recommendation must be both timely and specific to preserve an issue for *de novo* review

by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.,* 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 4, 2009

<div style="margin-left: 40%;">

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix

</div>