IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00545-WYD-KLM

TONY E. POWELL,

     Plaintiff,

v.

J. WILNER (S.I.A.),

     Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on **Defendant Wilner's Motion for Summary Judgment** [Docket No. 176; Filed September 30, 2009] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3, the Motion has been referred to this Court for a recommendation.  Plaintiff has responded [Docket No. 181; Filed November 17, 2009], the deadline for Defendant's reply has passed, and the Motion is ripe for resolution. The Court, having considered the entire case file and being sufficiently advised, **RECOMMENDS** that the Motion be **DENIED**.

## I.     Factual and Procedural Background

At all times relevant to this action, Plaintiff was incarcerated at the United States Penitentiary in Florence, Colorado ("USP-Florence")[1] and Defendant was a Special Investigative Agent assigned to USP-Florence.  Plaintiff, who is proceeding *pro se*, brought

---

[1]Plaintiff has since been transferred to the United States Penitentiary in Atwater, California.  *See* Public Information Inmate Data, Docket No. 176-2, Attachment 1.

this action against Defendant Wilner and several additional Defendants in their individual

capacities alleging violations of various constitutional rights pursuant to 42 U.S.C. § 1983

and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388,

395-97 (1971).  Defendants filed a Motion to Dismiss [Docket No. 127], which the Court

granted in part and denied in part [Recommendation, Docket No. 157; Order Affirming and

Adopting Recommendation, Docket No. 160].  The Court found that Plaintiff had stated a

cognizable claim for retaliation against Defendant Wilner in his individual capacity and

dismissed all other claims and Defendants.

During his time at USP-Florence, Plaintiff worked in the UNICOR factory.  Plaintiff's

Deposition, Docket No. 176-3, at 28, lines 22-23.[2]  Plaintiff and another inmate, Roger

Hinton, had an "altercation" while they were working at the factory; according to Defendant

it was a physical altercation, but according to Plaintiff it was a verbal altercation.  *See*

Incident Report, Docket No. 176-2, Attachment 2; *Plaintiff's Deposition* [#176-3], at 30-31,

lines 17-25,1-10.  Plaintiff and Hinton were placed in a Special Housing Unit ("SHU") while

the incident was investigated.   Administrative Detention Order, Docket No. 176-2,

Attachment 3.

As a part of the investigation, Defendant interviewed Plaintiff and issued an Incident

Report.  *See Incident Report* [#176-2].  At a subsequent disciplinary hearing, Plaintiff was

---

[2]In his Response, Plaintiff protests any use of his Deposition because he pointed out certain "discrepancies" to Defendant that apparently were not resolved.  *See Response* [#181] at 1-2.  Plaintiff filed a signed statement attesting to the accuracy of his deposition, except the changes that he identified in an attached document entitled "Amendment to Deposition."  *Id.* at 5-7.  Portions of Plaintiff's objections to the deposition are illegible.  Plaintiff does not allege that he made important statements at his deposition that are relevant to this Motion and are not included in the transcript.  *Id.*  Rather, his objections seem to center on allegations that the deposition includes statements that he did *not* make.  *Id.*  Despite the facial improbability of that assertion, the Court does not use any statement made by Plaintiff as evidence against him in its resolution of this Motion.

found guilty of assaulting inmate Hinton.  Discipline Hearing Officer ("DHO") Report No. 1,

Docket No. 176-2, Attachment 4.  Plaintiff then attempted to contact Hinton and convince

him to sign an affidavit stating that no physical altercation had taken place.  *See Plaintiff's*

*Deposition* [#176-3] at 65, 67,69, 70-74.  Hinton signed the affidavit, *see* Docket No. 176-2,

Attachment 7, and Plaintiff proceeded to appeal his conviction through the Federal Bureau

of Prisons' administrative process.  Upon appeal, the Regional Director ordered that a re-

hearing take place, finding that "fighting" was the more appropriate charge.  Docket No.

176-2, Attachments 8 & 9.  At the re-hearing, the presiding officer decided to expunge the

Incident Report pertaining to Plaintiff.  DHO Report No. 2, Docket No. 176-2, Attachment

10.

     In the instant Motion, Defendant requests that the Court enter summary judgment

in his favor on the remaining retaliation claim.

**II.**  **Legal Standard**

     The purpose of a summary judgment motion is to assess whether trial is necessary.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed.R.Civ.P. 56(c) provides that

summary judgment shall be granted if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine

if the evidence is such that a reasonable jury could return a verdict for the nonmovant.

*Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986).  A fact is material if it might

affect the outcome of the suit pursuant to the governing substantive law.  *Id.*

     The movant must show the absence of a genuine issue of material fact.  *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  Where, as here, the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  After the movant has met his initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the nonmovant.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  Further, the nonmoving party's affidavit or evidence must be more than "mere re-argument of a party's case or a denial of an opponent's allegation" or it will be disregarded. See 10B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2738 at 356 (3d ed.1998).

Plaintiff is proceeding in this matter *pro se*, and the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."

*Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.   *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.   Analysis

Defendant asserts that there is an absence of evidence that supports Plaintiff's retaliation claim and that he is entitled to qualified immunity.   Qualified immunity, in certain circumstances, protects government officials from litigation when they are sued in their individual capacities.   *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814-18 (1082). "Government officials . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Id.* at 818.   Defendant argues that Plaintiff "has not alleged sufficient facts" to show that Defendant violated Plaintiff's constitutional rights and that "[n]o genuine evidence of animus has been established."   *Motion* [#176] at 10.

"[B]ecause qualified immunity is 'designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently" from other motions for summary judgment.   *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted).   When a defendant asserts a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation," *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   Secondly, the Court must consider whether Plaintiff has established that "the

constitutional right was clearly established at the time of the alleged unlawful activity."
*Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing
*Pearson v. Callahan*, --- U.S. ----, 129 S. Ct. 808, 815-16 (2009).[3]

In order for Plaintiff's claim "to survive summary judgment, the record must contain facts that rebut the presumption of [Defendant's] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3  (D. Colo. Sept. 11, 2009) (finding for plaintiff on summary judgment motion on qualified immunity where plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F.Supp. 2d 1183,1203 n.7 (D. N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome defendant's motion for summary judgment on basis of qualified immunity, "plaintiff must do more than rest on its own speculation or pleadings"); *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

---

[3]It is no longer mandatory that the Court first consider whether Plaintiff has established a constitutional violation; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established.  *Pearson*, 129 S. Ct. at 818.  Here, however, I find that it is appropriate to first address whether Plaintiff has demonstrated that Defendant violated a constitutional right.

"When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" *Norris v. City of Aurora*, No. 03-cv-01334-WDM-BNB, 2005 WL 1768758, at *3 (D. Colo. July 25, 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002)).  "Consequently, a summary judgment motion may not be granted on [a section 1983 claim] for which any genuine issue of material fact remains – regardless of whether the potential grant would arise from qualified immunity or from a showing that the officer merely had not committed a constitutional violation." *Id.* (quoting *Olsen*, 312 F.3d at 1315); *see also Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003) ("[W]hen issues of material fact remain, and the court determines that a defendant's conduct as alleged by plaintiff violates clearly established law, qualified immunity is not appropriate."); *Davis v. Hill*, 173 F.Supp. 2d 1136 (D. Kan. 2001) (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 215 (6th Cir. 1989)) (observing that when there is a dispute as to a fact material to whether the constitutional violation took place, the court "may not . . . proceed and rule as a matter of law that defendants are entitled to immunity" because "'the legal question of qualified immunity is completely dependent upon which view of the facts is accepted by the jury.'").

Here, Defendant asserts in his Motion that there is no genuine dispute regarding any fact that is material to the legal determination of whether Defendant committed a constitutional violation, and therefore Defendant is entitled to judgment as a matter of law. To resolve this Motion, the Court must determine whether a constitutional violation can be made out from the record and whether Defendant has shown that there is an absence of dispute as to all facts material to a determination of whether Defendant committed a constitutional violation.

Plaintiff makes a retaliation claim against Defendant. The Tenth Circuit has held that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (citation omitted). Specifically, Plaintiff contends that Defendant Wilner used a false incident report, in which Defendant stated that Plaintiff confessed to assault when he did not so confess, in order to extend Plaintiff's time in segregation in retaliation for Plaintiff's refusal to confess. *Complaint* [#103] at 5. To establish a retaliation claim, a plaintiff must demonstrate: "(1) that [he] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

In support of his version of the facts at issue in this matter, Plaintiff has submitted two signed declarations of facts that were made under penalty of perjury pursuant to 28 U.S.C. § 1746 and therefore are acceptable alternatives to signed, sworn, and notarized affidavits. *See* Declaration No.1, Docket No. 103, at 3-4; Declaration No. 2, Docket No. 181, at 3. Declaration 1 was submitted with Plaintiff's Complaint, and Declaration 2 was submitted with his Response. Although Declaration No. 1 is separate from Plaintiff's Complaint and the Complaint is not a "verified complaint," the Court will consider Declaration No. 1 as proper 56(e) evidence. *See, e.g.*, *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated

as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).").

In his Declarations, Plaintiff presents the following version of the facts. Plaintiff was placed in segregation following an alleged assault on another inmate. *Declaration No. 1* [#103], at 3. Defendant later questioned Plaintiff about the alleged incident. *Id.* No one else was in the room at the time. *Id.* According to Plaintiff, Defendant asked Plaintiff to tell him "what happened, and when he did not like the response, [Defendant] pushed [him] in the middle of [his] chest, and then [his] should[er] as the means to threaten, and coerce, [Plaintiff] into saying that [he] assaulted another inmate, that the inmate did not assault [Plaintiff] back." *Id.* Plaintiff declares that he "did not provide a statement of guilt to the Defendant." *Declaration No. 2* [#181]; *see also Declaration No. 1* [#103] at 3 (stating that Defendant attempted to coerce Plaintiff to confess but Plaintiff "didn't agree to what he demanded"). Plaintiff states that this meeting took place around eight or nine o'clock at night and that the very next morning, he received the Incident Report containing his false confession. *Declaration No. 1* [#103] at 3. The dates in the Incident Report support this chronology of events. *See Incident Report* [#176-2] (including that incident took place on January 27, 2006, Defendant dated report as completed on February 11, 2006, and report delivered to Plaintiff on February 12, 2006).

Thus, under Plaintiff's version of the facts, the first prong of the retaliation test is met. Plaintiff engaged in constitutionally protected conduct by exercising both his Fifth Amendment right against self-incrimination and his First Amendment right not to answer Defendant's questions about the alleged assault, and the first element of his retaliation

9

claim is sufficiently supported.[4]   Defendant does not present any evidence directly addressing whether Plaintiff confessed during his interview with Defendant, such as an affidavit or Plaintiff's deposition, and does not argue that the conduct Plaintiff asserts was not protected as a matter of law.

Regarding the second prong of the retaliation test, taking the evidence in the light most favorable to Plaintiff, the Court finds evidence to support a finding that the alleged falseness of the Incident Report resulted in adverse action against Plaintiff.  From a review of the record, it is not clear exactly how the alleged false confession in the Incident Report affected the sanctions imposed on Plaintiff and whether the eventual expungement of the Report eliminated any negative impacts the Report had on Plaintiff.  The first DHO Report indicates that Plaintiff's punishment of 30 days disciplinary segregation was fulfilled with time served and that Plaintiff also was sanctioned with the loss of his commissary privilege, his visiting privilege, and his phone privilege for sixty days.  *DHO No.1* [#176-2].  Plaintiff states that when the matter came back before prison officials after appellate review, the DHO gave him "sanctions all over again, before he actually expunged."  *Declaration No. 1* [#103] at 4.  Citing page 12 of Plaintiff's deposition in support, Defendant contends that there is an absence of evidence to support this element of Plaintiff's claim because "Plaintiff did not stay in the SHU any longer than the other person perceived to be in the fight ."  *Motion* [#176] at 8.  This circumstance says little about whether the allegedly false report

---

[4]While generally addressed in conjunction with the exercise of conduct protected by the First Amendment, retaliation claims may also be brought by individuals who have exercised other constitutional rights such as the right against self-incrimination pursuant to the Fifth Amendment.  *See Wilkie v. Robbins*, 531 U.S. 537, 555-56 (2007) (citing *Lefkowitz v. Turly*, 414 U.S. 70 (1973)); *see generally Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-98 (1988).  As noted above, Defendant does not argue that as a matter of law, Plaintiff did not engage in protected conduct.

resulted in punishment of Plaintiff.  Furthermore, although the complete line of questioning does not appear in the portion of the deposition provided by Defendant, immediately preceding Plaintiff's acknowledgment that the other inmate was placed in segregation "during the same amount of time," Plaintiff apparently describes the other sanctions that he alone experienced, including lost phone privileges and loss of his job at the factory.  *See Plaintiff's Deposition* [#176-3] at 12, lines 1-22.  Defendant offers no other evidence, and the Court cannot conclude based on the record before it that a reasonable jury could not find for the Plaintiff as to this element of the claim.

Defendant's primary argument is that Plaintiff has not presented any evidence that supports the third element of Plaintiff's claim, that is, that "the actual motivating factor behind [D]efendant's actions was retaliation." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (explaining necessary showing for third element of retaliation claim). The Court disagrees.  "If the inmate presents evidence, including circumstantial evidence, that is 'sufficient to support an inference by a fair-minded jury that defendant [] took . . . action against him based *at least in part* on improper motives,' then the court must deny the [defendant's] motion for summary judgment." *Love v. Behler*, No. 00-3059-JWL, 2000 WL 1859003, at *4 (D. Kan. 2000) (quoting *Smith*, 899 F.2d at 949) (emphasis added); *see also Quintana v. Edmond*, No. 06-cv-01187-WDM-KLM, 2008 WL 3539265, at *3 (D. Colo. Aug. 12, 2008) (emphasizing instructions from the Tenth Circuit Court of Appeals that where inmate's evidence "could establish that the adverse action was motivated at least *in part* by an improper motive, this is sufficient to create an issue of fact as to whether retaliatory animus was the 'but for' cause of the decision").  In attempting to prove the causal connection between the conduct and the adverse action suffered, the presentation of

circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Smith*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him – circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); *Harris v. Fleming*, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation").  In a retaliation claim, "an inference of retaliatory motive may be undermined by a long delay between the protected activity and the challenged conduct." *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir.2007) (internal quotation marks and citation omitted).

Plaintiff has stated that Defendant violently confronted him about the alleged incident and pressured him to confess.  Plaintiff further alleges that almost immediately after this confrontation, Defendant issued his report indicating that Plaintiff had confessed, the very action that Plaintiff contends Defendant had been angry that Plaintiff would not do.  Thus, Plaintiff provides an accounting of events that could establish that Defendant's action in issuing the false report was motivated at least in part by Plaintiff's protected conduct.  *Cf. Marsh v. Corrections Corp. of Amer.*, 134 F.3d 383, at *3 (10th  Cir. 1998) (unpublished decision) (finding insufficient evidence to support inference of improper motive where plaintiff's chronology of events showed only protected conduct in close proximity to allegedly retaliatory drug test was five days before drug test request and officials requesting drug test were unaware of her protected conduct).

Defendant apparently rests his argument on the premise that because Plaintiff *did*, in actuality, assault the other inmate, there is no evidence to support a finding that Defendant was motivated to issue the report by Plaintiff's refusal to confess.  In support, Defendant points to Plaintiff's admission at his deposition of an "altercation" that required other inmates to "physically separate" him and Hinton, an admission by Hinton that Plaintiff assaulted him, and Plaintiff's efforts to obtain an affidavit from Hinton recanting Hinton's original story.  *Motion* [#176] at 7-8.  However, taking this evidence in the light most favorable to Plaintiff, it does not support a finding that there is an absence of evidence to support Plaintiff's claim.  First of all, in the portion of the deposition cited by Defendant, Plaintiff describes the incident thus:

> Q:   Did you and [Hinton] have an argument while in the UNICOR?
> A:   Yes.
> Q:   What was it regarding?
> A:   It was in relation with a misunderstanding of him – the incident, the – tool that he caused dust to fly, and it – it went everywhere.  And then I sprayed the thing back, and – and dust went.  And then we started arguing about it.  It was some infantile stuff.  And then, shortly after, inmates came and – and got in between us and pointed out how infantile it was.  So we both agreed.  And that's as far as it went.

*Deposition* [#176-3] at 30-31, lines 17-25, 1-4.  Plaintiff describes a verbal argument in which other inmates interfered, but he does not state that the other inmates physically separated them, nor does Plaintiff use language which reasonably infers that the other inmates pulled him and inmate Hinton apart.  Second, no admission by Hinton that the assault took place has been submitted for the Court's review.  Third, Plaintiff's answers at deposition and the hard copies of Plaintiff's letters seeking the affidavit from Hinton reveal some ambiguity as to whether the affidavit is properly characterized as a recantation.

Plaintiff states at his deposition that based on the information he received from Hinton, the latter never told Defendant that Plaintiff hit him.  *Plaintiff's Deposition* [#176-3] at 29, lines 10-22.  Plaintiff's letters indicate that at the time of writing the letters, he believed Hinton had made a statement to Defendant because of information given him by Defendant. *See* Letter to Hinton, Docket No. 176-2, Attachment 6 ("The other night SIS Wilner paid me a visit.  He said that you told him that we fought.").  The Incident Report itself does not reference any statement by Hinton.  *See Incident Report* [#176-2] ("Specifically, inmate Powell admitted that he and inmate Hinton had a verbal argument that resulted in inmate Powell hitting inmate Hinton on the left cheek causing a scratch just below his eye.  Inmate Powell admitted that he was restrained by other inmates in the area, and he and inmate Hinton separated at that time.  Inmate Powell also admits that inmate Hinton did not assault him during the incident.").  It is up to a jury, not this Court, to determine whether Plaintiff's or Defendant's version of events is more credible.

There are therefore sufficient "evidenced facts" to support a finding that Defendant violated Plaintiff's constitutional rights, as well as genuine disputes as to facts material to a determination of whether Defendant violated Plaintiff's constitutional rights.  Defendant does not argue that even if a violation did occur, he is entitled to qualified immunity because the law was not clearly established at the time of the alleged violation.  Nor is it likely that he could do so successfully. *See generally Smith*, 899 F.2d at 947; *Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*, 487 U.S. 781, 798 (1988) (recognizing that First Amendment embraces right not to speak); *Lefkowitz v. Turley*, 414 U.S. 70, 81 (1973) (holding that government cannot compel self-incriminating testimony without immunization by threatening adverse action against those who assert their Fifth Amendment rights).

Accordingly, because genuine issues of material fact exist, the Court concludes that Defendant is not entitled to qualified immunity and summary judgment as to the claim itself is inappropriate.

## IV.      Conclusion

As set forth above, I respectfully **RECOMMEND** that the Motion be **DENIED**.

IT IS HEREBY **ORDERED** that pursuant to Fed.R.Civ.P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed.R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  March 1, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix